JORGENSON, Judge,
dissenting.
I respectfully dissent.
*1296 International Bank of Miami [International] appeals from an order of the trial court granting summary judgment in favor of Gene Lee Bennett and awarding an in-terpleaded fund of $89,810 to Bennett.
International, a national banking association plagued by financial troubles, contacted an executive recruiter in New York to seek a new bank president. Following a national search, International, through its board of directors, selected Bennett, then president of a bank in New Jersey, to serve as its president for a term of three years, to run from June 7, 1982, to June 6, 1985. Prior to Bennett’s acceptance of International’s offer, the parties entered into negotiations for Bennett’s compensation package. Bennett expressed his concern for the security of his position with International since acceptance would result in the relocation of his family from New Jersey to Miami as well as the resignation of his current lucrative post. International responded to Bennett’s concern by agreeing to provide Bennett with one year’s salary in the event of his premature termination. This provision was of critical importance to Bennett in deciding to accept the presidency of a troubled bank which might ultimately fail. Accordingly, the written employment agreement drafted by International provides for the payment of one year’s salary to Bennett as liquidated damages and severance pay if Bennett’s employment were to be terminated without cause prior to June 6,1985. The severance payment clause of the employment agreement provides, in relevant part: “The Employee shall receive one year’s salary payable in twelve (12) monthly installments as liquidated damages and severance pay only if his employment is terminated without cause by the Employer, regardless of the period of time remaining to be performed under this Agreement.”
Shortly after the execution of the employment contract, International drafted a separate escrow agreement. This agreement details the procedure for the opening of an escrow account at Southeast Bank in order to set aside funds equal to the net current annual salaries of various bank officers, including Bennett. The agreement also sets forth the procedure for disbursement of the escrow funds. The escrow agreement provides that “[t]his agreement shall be construed in accordance with the laws of the State of Florida.” Additionally, the escrow agreement contains a clause which provides that the escrow agreement has a separate existence apart from the employment agreement.[1] The plain language of the clause attests to the obvious intent of International to maintain the independence of the employment and escrow agreements. International subsequently funded an escrow account at Southeast Bank.
Predictably, International foundered. The bank was sold before the expiration of Bennett’s term. The new board of directors of International terminated Bennett’s employment without cause as of May 7, 1984. Bennett and International both made demand upon the escrow agent, Southeast Bank, for the escrow fund. On May 9, 1984, Southeast Bank filed an inter-pleader action against Bennett and International in order to determine their respective rights to the fund. International and Bennett filed cross-motions for summary judgment. At the hearing on these motions, International and Bennett stipulated that entitlement to the fund could be determined as a matter of law. International further stipulated that the amount of the interpleaded fund, representing Bennett’s annual salary, was reasonable. The sole question before the trial court was to whom the interpleaded amount rightfully belonged.
International claims that the trial court erred in entering summary judgment for Bennett because the severance payment clause in the employment agreement is void and unenforceable under the National Bank Act, 12 U.S.C. § 24 (1982). The em- *1297 cial provision of section 24 is the fifth paragraph which states that the board of directors of a national bank may dismiss any bank officer “at pleasure.”[2] International argues that a severance payment clause violates this section because it restricts the ability of a board of directors to freely exercise its power to remove a bank officer “at pleasure” by virtue of imposing a penalty. In support of its position, International relies on a substantial body of law interpreting the fifth paragraph. In Rohde v. First Deposit National Bank, 127 N.H. 107, 497 A.2d 1214 (1985), a discharged officer of a national bank sought damages under his employment contract which had provided that if he were terminated without cause any time prior to the expiration of his three-year contract, he would receive as compensation the salary due him for those three years. The court affirmed the dismissal of his claim on the ground that such a contractual provision contravened the bank’s right to immediately discharge the officer. The court in Copeland v. Melrose National Bank, 229 A.D. 311, 241 N.Y.S. 429, aff'd, 254 N.Y. 632, 173 N.E. 898 (1930), similarly refused to enforce a provision in a bank officer’s employment contract requiring the bank to pay the remainder of the officer’s salary for the unexpired period of his employment contract in the event of termination prior to the expiration of his contract. See also Kemper v. First Nat’l Bank, 94 Ill.App.3d 169, 49 Ill.Dec. 799, 418 N.E.2d 819 (1981) (board of directors of national bank could dismiss officer before expiration of his stated tenure without incurring liability for breach of officer’s employment contract). Although these cases disallow enforcement of severance payment clauses in the employment contracts of bank officers as vio-lative of the National Bank Act, the cases are not dispositive of the question of Bennett’s entitlement to the interpleaded escrow fund.
Bennett’s right to enforce the severance pay provision in his employment contract is not at issue and thereby distinguishes the instant case from cases such as Rohde and Copeland. The only issue here concerns Bennett’s rights under the escrow agreement. The escrow agreement itself furnishes the basis for Bennett’s claim to the fund. Unlike Rohde and Copeland, this case was before the trial court in the posture of an interpleader action. Significantly, this was not an action brought by Bennett to recover damages pursuant to his employment agreement with International.
I would hold, as did the trial court, that the interpleaded fund properly belongs to Bennett according to the plain language of the escrow agreement. Nothing in the National Bank Act prohibits a national bank from entering into an escrow agreement with a prospective employee. The creation of an escrow agreement and funding of an escrow account in order to attract a president of Bennett’s caliber are not barred by the National Bank Act. Nor does the establishment of an escrow fund constitute a “penalty” which contravenes the “at pleasure” provision of the National Bank Act. Although Bennett could not require International to fund an escrow account, once International did so its board of directors and its successors were bound by its contract. After the escrow fund was set up, it could no longer be characterized as an asset of International.
Moreover, International, the drafter of the escrow agreement, envisioned the sev-erability of the escrow agreement and its construction pursuant to Florida law notwithstanding any infirmities in the employment agreement. A party is bound by the language it adopts in an agreement no matter if the language may later prove to be disadvantageous. Security First Fed. Sav. & Loan Ass’n v. Jarchin, 479 So.2d *1298 767, 770 (Fla. 5th DCA 1985), rev. denied, 488 So.2d 831 (Fla.1986). Where a contract is clear and unambiguous, the contract itself is the best evidence of the parties’ intent, and the contract’s meaning is a question of law for the court. Jarr v. University of Miami, 474 So.2d 239, 242 (Fla. 3d DCA 1985), rev. denied, 484 So.2d 10 (Fla.1986).
It is clear that International voluntarily elected to establish the escrow agreement. But for the existence of the escrow account and agreement, Bennett would not have accepted the presidency of a bank with a troubled past and a tenuous future. International’s reliance on Ferguson v. Five Points National Bank of Miami, 187 So.2d 45 (Fla. 3d DCA 1966), is misplaced. In Ferguson, this court held that a holder of a note could not enforce the bank’s promise to purchase the note where such a promise was without consideration as required by the National Bank Act. In this case, International received consideration in the form of Bennett’s acceptance of its presidency for its agreement to establish an escrow fund. The trial court correctly concluded that the award of the interplead-ed fund to Bennett did not unlawfully violate the “at pleasure” provision of the National Bank Act. To hold otherwise would completely ignore the obvious intent of the parties in agreeing to and establishing the escrow account and would sanction the attempt of International’s new board of directors to evade a lawful commitment made by the predecessor board.
Contrary to the court’s conclusion that upholding the escrow agreement would only amount to providing a patent subterfuge designed to circumvent the law, the escrow agreement, in my view, is a lawful contract binding on the successor board of directors. The deposition of the appellee Bennett indicates that representatives of the office of the Controller of the Currency had reviewed both the employment contract and the escrow agreement during the course of a regular audit of the bank. Bennett testified that such agreements are an industry standard. Nothing in this record controverts that testimony. If such agreements were not to be enforced, it seems to me that during regular audits the Controller of the Currency would point out such a fact to bank directors and officers.
I would affirm.

. This clause reads as follows:
15. No Effect on Employment Agreements. This Agreement shall have no effect on the validity or enforceability of the written Employment Agreements between the Officers and the Bank, which are, and remain, in full force and effect.

. The relevant portion of the National Bank Act provides:
[A] national banking association ... shall have power—
******
Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places.
12 U.S.C. § 24 (1982).